UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA *ex rel*
William Q. Tingley, III,

        Plaintiff,

                                      File No. 1:14-cv-1097

v.

                                      HON. ROBERT HOLMES BELL

PNC FINANCIAL SERVICES
GROUP, INC., FIFTH THIRD BANCORP,

        Defendants.

                               /

## OPINION

Relator William Q. Tingley, III, filed this lawsuit under the False Claims Act (FCA),
31 U.S.C. § 3729 et seq., on behalf of the United States. Defendants are Fifth Third Bancorp
("Fifth Third") and PNC Financial Services Group, Inc. ("PNC"). The United States has
declined to intervene. Fifth Third filed a motion to dismiss the action on September 1, 2015.
Several weeks later, Tingley filed a notice of voluntary dismissal, to which the United States
consented. This matter is before the Court on Defendants' motions for sanctions. (ECF Nos.
71, 81.)

### I.

This is the latest in a series of cases filed by Relator regarding the development of
land formerly occupied by the Berkey & Gay furniture factory ("B&G site") in downtown
Grand Rapids. Relator owns, or owned, a business located next to the B&G site. What started

as a dispute between Relator and the site developers over the developers' allegedly improper use of a parking lot and ramp adjacent to Relator's business, evolved into a dispute about whether the site developers and their contractors had improperly removed contaminated soil from the B&G site from April to November, 2000, with Relator filing suit against an ever-expanding universe of defendants connected to the development project. Because entities related to Fifth Third[1] and PNC[2] provided loans for the development of the B&G site in March 2001, and then became members of one of the developer companies, 940 Monroe LLC, one or both of them have been named as defendants in several of these cases, including: (1) *Proto-CAM v. 900 Monroe LLC*, No. 02-03723-NZ (Kent County Circuit Court) ("*900 Monroe*"); (2) *Tingley v. Kortz*, No. 02-09503-CE (Kent County Circuit Court) ("*Kortz*"); (3) *United States ex rel. Tingley v. 900 Monroe LLC*, No. 1:02-cv-319 (W.D. Mich.) ("319 case"); (4) *Tingley v. City of Grand Rapids*, No. 1:02-cv-673 (W.D. Mich.) ("673 case"); and (5) *Tingley v. Pioneer Gen. Contractors*, No. 11-09007-CZ (Kent County Circuit Court) ("*Pioneer General*"). None of Relator's many claims against Defendants has

---

[1]Old Kent Bank provided the development loan and Old Kent Financial Corporation became a member of 940 Monroe LLC. Relator claims that Defendant Fifth Third Bancorp is the successor to Old Kent Bank. (Am. Compl. ¶ 8, ECF No. 12.) However, Fifth Third claims that Fifth Third Bank is the successor to Old Kent Bank, and Fifth Third Financial Corporation is the successor to Old Kent Financial Corporation. (Danhof Aff., ECF No. 65-17, PageID.1380.) Fifth Third Bank is a subsidiary of Fifth Third Financial Corporation, which is a subsidiary of Fifth Third Bancorp. (*Id.*) Fifth Third Bancorp was not a party to the loan. (*Id.*)

[2]National City Bank also provided a development loan; Relator claims that PNC is the successor to National City Bank.

been successful.  In fact, Relator has been sanctioned by this Court and the state court on several occasions for pursuing vexatious and frivolous litigation against them.

The first case, *900 Monroe,* was filed in April 2002. Relator named Fifth Third in an amended complaint, alleging that it and the developers of the B&G site, 900 Monroe LLC and 940 Monroe LLC, were liable under Michigan's Hazardous Waste Management Act (HWMA), Mich. Comp. Laws § 324.11101 *et seq*., because they removed, or conspired to remove, contaminated soil from the B&G site and deposited it at another location. (*900 Monroe*, Am. Compl. ¶¶ 89-90, ECF No. 65-1.) Relator contended that Fifth Third financed the renovation of the B&G site, directed the contractor to remove hazardous waste from the site, and later took control over 940 Monroe. (*Id*.) The conspiracy claims were dismissed and the court rejected the other claims against Fifth Third. According to the court, it was not disputed that Fifth Third Bank made a loan commitment to the developers in November 2000, *after* the contaminated soil was allegedly removed; the fact that the bank became a member of one of the developer corporations in 2001 was not sufficient to give rise to liability. (12/16/2004 Mot. Hr'g Tr. 130-37 (Kent County Circuit Court), ECF No. 72-1.) As a matter of state law, members of an LLC are not liable for the actions of the LLC itself. (*See id.* at 132 (citing Mich. Comp. Laws § 450.4501(3).) Although Relator claimed that Fifth Third managed the development of the B&G site, the evidence before the court indicated that Fifth Third Bank merely required environmental compliance as a condition for the loan; such conduct did not put the bank in control over the site development. (*Id.* at 132-34.) Thus, Fifth

Third was dismissed. Several years later, the remaining parties stipulated to dismiss the case with prejudice. (*900 Monroe*, 3/8/2008 Stipulation, ECF No. 65-5.)

In September 2002, while the *900 Monroe* case was still pending, Relator filed the *Kortz* lawsuit, alleging that several defendants, including Fifth Third, conspired to release contaminated soil from the B&G site into the environment in violation of the HWMA.  The matter was consolidated with the *900 Monroe* case and Fifth Third was dismissed for the same reasons stated above.

In the same year that he filed *900 Monroe* and *Kortz*, Relator also filed two actions in the Western District of Michigan. In the 319 case, he brought a *qui tam* action on behalf of the United States under the FCA. He alleged that several defendants, including Fifth Third, were liable under federal environmental law for releasing contaminated soil at the B&G site and transporting it to another location. He also claimed that the defendants purposefully concealed their activities from the government. On June 13, 2003, the Court dismissed the 319 case because Relator could not bring a *qui tam* action while proceeding *pro se*. (*United States ex rel. Tingley*, No. 1:02-cv-319 (W.D. Mich.), 6/13/2003 Op. 6, ECF No. 115.)  As part of its judgment, the Court noted Relator's prior history of litigation and sanctioned him by awarding Fifth Third and the other defendants their attorney's fees and costs and by enjoining Relator from bringing any other actions against a named defendant without filing a $25,000 cash bond.  The Court's judgment and imposition of sanctions were upheld on appeal. *United States v. 900 Monroe*, 106 F. App'x 466 (6th Cir. 2004).

In the 673 case, Relator claimed that several defendants, including Fifth Third, violated his civil rights under 42 U.S.C. §§ 1983, 1985, 1986, and that Fifth Third committed "bank fraud, tax evasion, money laundering" and other "illicit activity," resulting in the release of hazardous substances from the B&G site into the environment, in violation of federal and state environmental law. (*See* Compl. in 673 case, ECF No. 65-9.) The court dismissed the claims against Fifth Third because they failed to state a claim and/or because they were barred by claim preclusion. (*Tingley*, No. 1:02-cv-673 (W.D. Mich.), 6/13/2003 Op. 70, ECF No. 131.) When it entered judgment, the Court sanctioned Relator and awarded Fifth Third and other defendants their attorney's fees and costs. The Court also permanently enjoined Relator from filing an action against a named defendant without filing a $30,000 bond.

Undeterred, Relator returned to state court in 2011 and filed the *Pioneer General* lawsuit against Fifth Third, PNC and other defendants, alleging that he had been personally injured by the movement of contaminated soil at the B&G site ten years earlier, and that the defendants failed to exercise reasonable care to avoid causing him injury. The court dismissed the action as barred by *res judicata* and the statute of limitations. (*See* Op. & Order (Kent County Cir. Ct. Mar. 16, 2012), ECF No. 65-14.) The court also sanctioned Relator for bringing an action that he knew "was devoid or arguable legal merit" and the "primary purpose" of which was to "harass, embarrass, or injure the Defendants." *See Tingley v. Pioneer Gen. Contractors, Inc.*, 2013 WL 6670851, at *7 (Mich. Ct. App. Dec. 13, 2007)

5

(quoting circuit court opinion). The judgment and order for sanctions were affirmed on appeal by both the Michigan Court of Appeals and the Michigan Supreme Court.

## II.

In this suit, Relator brings another *qui tam* action under the FCA premised on the allegedly improper handling/removal of contaminated soil from the B&G site.  This time, he contends that PNC and Fifth Third entered into Capital Purchase Program (CPP) agreements with the Treasury Department in 2008, in which they falsely represented that "there were no proceedings or liabilities, or threat of such, against it or its subsidiaries relating to the release of contaminated soil from the [B&G site] that may be [sic] a materially adverse effect on it." (Am. Compl. ¶¶ 158, 171, ECF No. 12.) Relator claims that Defendants have "'arranger' liability under CERCLA, 42 U.S.C. § 9607(a)(3) and Michigan's state-law counterpart in the Natural Resource and Environmental Protection Act (NREPA), Mich. Comp. Laws § 324.20126(d), for their involvement in the release of contaminated soil at the B&G site. (Am. Compl. ¶¶ 105, 111.) According to Relator, Defendants should have disclosed these liabilities to the Government. (*Id.* at ¶¶ 158, 171.)

After receiving service of the complaint, Fifth Third filed a motion to dismiss.  Instead of responding to the motion to dismiss, Relator voluntarily dismissed the action pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure. The United States subsequently consented to dismissal without prejudice, in accordance with the FCA. *See* 31 U.S.C.

6

§ 3730(b)(1) ("The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting.").

Rule 41(a) permits dismissal of a case by the plaintiff without a Court order if a notice is filed prior to the filing of an answer or motion for summary judgment. Fed. R. Civ. P. 41(a)(1)(A)(i). No answer or motion for summary judgment has been filed. Consequently, the notice of dismissal was effective to dismiss the case. Moreover, because the United States is the "real-party-in-interest" to the FCA claim, *United States v. Health Possibilities, PSC*, 207 F.3d 335, 341 (6th Cir. 2000), and has consented to dismissal without prejudice, the case has been dismissed without prejudice.

## III.

Before the Court are Defendants' motions for sanctions under Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, 31 U.S.C. § 3730(d)(4), and the Court's inherent powers. Defendants argue that Relator's action is meritless and is barred by collateral estoppel, res judicata, and the statute of limitations. Defendants contend that Relator and his counsel should be sanctioned for filing a meritless and frivolous action based on facts that have already been adjudicated in prior cases, specifically the *900 Monroe* and *Kortz* cases. Defendants further contend that Relator's counsel cannot claim ignorance of the disposition of Relator's prior litigation because counsel works for the same law firm that represented Relator on appeal from the dismissal of the *Pioneer General* case. Moreover, counsel must

have been aware of the $30,000 bond requirement when filing the case, which would have put him on notice of Relator's previous actions.

Under 31 U.S.C. § 3730(d)(4), "the court may award to the defendant its reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." *Id.* It is unclear whether this provision applies, because Plaintiff consented to voluntarily dismiss the action without prejudice. Defendants have not "prevailed" in the ordinary sense because the dismissal without prejudice did not effect a "judicially sanctioned change in the legal relationship of the parties." *Buckhannon Bd. & Care Home, Inc. v. W.V. Dep't of Health & Human Resources*, 532 U.S. 598, 605 (2001). Consequently, the Court will not award monetary sanctions under § 3730(d)(4).

Under 28 U.S.C. § 1927, an attorney who "multiplies the proceedings in any case unreasonably and vexatiously" may be required to satisfy costs and attorney's fees. *Id.* "The proper inquiry is not whether an attorney acted in bad faith; rather, a court should consider whether an attorney knows or reasonably should know that a claim pursued is frivolous." *Hall v. Liberty Life Assur. Co. of Bos.*, 595 F.3d 270, 275 (6th Cir. 2010). Sanctions under § 1927 are appropriate where an attorney has engaged in some sort of conduct that, from an objective standpoint, "falls short of the obligations owed by the member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Shepard v.*

*Wellman*, 313 F.3d 963, 969 (6th Cir. 2002) (quotation and citation omitted). The Court cannot say that Relator's counsel unreasonably and vexatiously multiplied the proceedings in this particular case, because the matter was voluntarily dismissed shortly after a motion to dismiss was filed. Thus, the Court declines to sanction Relator's counsel pursuant to § 1927.

Rule 11 of the Federal Rules of Civil Procedure affords the district court the discretion to award sanctions when a party submits to the court pleadings, motions or papers that are presented for an improper purpose, are not warranted by existing law or a nonfrivolous extension of the law, or if the allegations and factual contentions do not have evidentiary support. *See* Fed. R. Civ. P. 11(b)(1) through (3). Relator contends that PNC is not entitled to sanctions under Rule 11 because it did not serve its motion for sanctions on Relator at least 21 days before filing it with the Court, in accordance with Rule 11(c)(2) of the Federal Rules. The Court agrees. Thus, as to PNC, Rule 11 does not apply. *See Ridder v. City of Springfield*, 109 F.3d 288, 297 (6th Cir. 1997) (holding "sanctions under Rule 11 are unavailable unless the motion for sanctions is served on the opposing party for the full twenty-one day 'safe harbor' period before it is filed with or presented to the court.")).

"In addition to Rule 11 and 28 U.S.C. § 1927, a district court may award sanctions pursuant to its inherent powers when bad faith occurs." *Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 375 (6th Cir. 1996). The district court has the "inherent authority to award fees when a party litigates 'in bad faith, vexatiously, wantonly, or for

oppressive reasons,'" *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th

Cir. 1997) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247

(1975)), or when the conduct is "tantamount to bad faith," *Roadway Express, Inc. v. Piper*,

447 U.S. 752, 767 (1980). "In order to award attorney fees under this bad faith exception, a

district court must find that 'the claims advanced were meritless, that counsel knew or should

have known this, and that the motive for filing the suit was for an improper purpose such as

harassment.'" *Big Yank Corp.*, 125 F.3d at 313 (quoting *Smith v. Detroit Fed'n of Teachers,

Local 231*, 829 F.2d 1370, 1375 (6th Cir. 1987)).

The Court's discussion in Relator's prior *qui tam* action provides a helpful starting

point for this case:

> . . . The court finds that this lawsuit, a reformulation of plaintiffs' unsuccessful
> lawsuits in state courts, violated all three of the very high statutory standards
> set forth in § 3730(d)(4). This lawsuit was clearly frivolous, clearly vexatious
> and brought primarily for purposes of harassment. *See United States v.
> National Academy of Sciences*, No. 90-2568, 1992 WL 247587, at * 7-9
> (D.D.C. Sept. 15, 1992). The *National Academy* case cited above is
> particularly instructive. Like this case, the purported *qui tam* action was a
> "dressed up" version of plaintiff's personal grievances and nearly identical to
> a claim previously dismissed. *Id.* at * 5. "[S]uch an action is an abuse of the
> *qui tam* process." *Id.* "The qui tam provisions are not intended as a consolation
> prize for 'disappointed litigators.'" *Id.* at * 6. In *National Academy*, the court
> found that appropriate relief was imposition of monetary sanctions against
> plaintiff pursuant to 31 U.S.C. § 3730(d)(4). *Id.* at * 7-9. The same relief is
> warranted in this case. . . .
>
> Injunctive relief against plaintiff[] is also appropriate under the court's
> inherent authority . . . . An injunction is necessary to deter plaintiff[] from
> filing future frivolous and vexatious lawsuits against defendants. The state
> courts have already imposed more than $27,000 in sanctions against plaintiff[]
> and corporations under [his] control with no discernable deterrent effect. There

10

is no evidence that the plaintiff[] ha[s] ever paid these court imposed sanctions. Monetary sanctions obviously have not deterred plaintiff[]. The court therefore finds it necessary to grant injunctive relief. It is well established that federal courts have inherent powers to impose appropriate non-monetary sanctions to deter future frivolous lawsuits and/or relitigation of the same lawsuit and frivolous and vexatious litigation. *See Cauthon v. Rogers*, 116 F.3d 1334, 1337 (10th Cir. 1997); *United States v. Circuit Court for Taylor County*, 73 F.3d 669, 670 (7th Cir. 1995); *Wrenn v. Vanderbilt Univ. Hosp.*, Nos. 94-5453, 94-5593, 1995 WL 111480, at * 3 (6th Cir. Mar. 15, 1995); *accord Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 269 (6th Cir. 1998)*; Telechron, Inc. v. Intergraph Corp.*, No. 95-1039, 1996 WL 370136, at * 2 (6th Cir. July 2, 1996) ("Although imposing sanctions pursuant to inherent power and Rule 11 are analogous, courts are not bound by the strictures of Rule 11 case law when exercising their inherent powers."). Every paper filed with the Clerk of this court, no matter how repetitious or frivolous, requires some portion of the institution's limited resources. A part of the court's responsibility is to see that these resources are allocated in a way that promotes the interests of justice. *See In re McDonald*, 489 U.S. 180, 184 (1989). Federal district courts necessarily have "considerable discretion" in drafting orders restricting a litigious party's access to courts. *See Martin-Trigona v. Shaw*, 986 F.2d 1384, 1387 (11th Cir. 1993). . . . Both the Supreme Court and the Sixth Circuit have reaffirmed the district court's inherent authority to take action to prevent abuse of the judicial system. *See Chambers v. Nasco, Inc.*, 501 U.S. 32, 43-45 (1991); *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997); accord *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 511 (6th Cir. 2002). A prerequisite to the exercise of such power is a finding that a litigant has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Big Yank*, 125 F.3d at 313. The concept of bad faith is an objective one. *See Coppedge v. United States*, 369 U.S. 348, 445 (1962). A claim is brought in bad faith if it is frivolous. *Id.*; *see Nabkey v. Gibson*, 923 F. Supp. 117, 122 (W.D. Mich. 1990). Objectively, plaintiffs' lawsuit was filed and continued vexatiously and in bad faith by litigants dissatisfied with the outcome of state-court lawsuits. . . .

The court concludes that the least severe sanction likely to deter plaintiff[] from filing abusive lawsuits in the future is payment of the defendants' reasonable attorney's fees and costs, and nonmonetary sanctions in the form of a permanent injunction against plaintiff[], prohibiting them from filing any civil action in this court unless plaintiff[] first file[s] with the Clerk of the

Court a bond in the amount of $25,000 to cover costs, fees, and sanctions that may be levied against plaintiff[] in the litigation. The injunctive relief has no punitive aspect, and serves a purely deterrent function. Further, it does not close the courthouse to plaintiff[] and should not deter the maintenance of meritorious litigation, as the bond secures plaintiff[']s future liability for costs, attorney's fees, and sanctions in the future litigation, which presupposes that the litigation will be unsuccessful or that plaintiff[] will engage in sanctionable behavior. If plaintiff[] do[es] not bring meritless or sanctionable claims, [he] ha[s] nothing to fear. By the same token, defendants and the court are given real and substantial protection against the maintenance of meritless litigation in the future, as they are assured of a solvent fund for the satisfaction of costs, attorney's fees and sanctions.

(319 case, 6/13/2003 Op. 7-11 (footnote omitted).)

Although the Court finds that § 3730(d)(4) does not apply and will instead rely upon its inherent powers for issuing sanctions in this matter, much of the foregoing discussion applies to this case.  The complaint in this case is yet another dressed-up version of Relator's oft-repeated claim that Defendants are liable for the removal or displacement of contaminated soil at the B&G site. This claim is meritless and barred, for reasons discussed herein and in Relator's prior litigation. Bringing yet another action based on this same premise is an abuse of the *qui tam* process. In addition, counsel knew or should have known that the claims were meritless or barred. Finally, the Court is satisfied that the action was brought for an improper purpose.

**A. Relator's claims are meritless and/or barred**

1. <u>Liability for environmental contamination</u>

 As discussed above, in *900 Monroe* and *Kortz*, the state court held that Fifth Third cannot be held liable for the alleged release and disposal of contaminated soil by the

developers and contractors at the B&G site. It is not liable merely because it (or its predecessor/subsidiary) provided a development loan and became a member of one of the developers after the releases occurred.

Although PNC was not a party to those cases, the same conclusions apply to PNC because the allegations against it are substantially the same as those against Fifth Third. Like Old Kent Bank, National City Bank (the alleged predecessor to PNC) issued a loan to the developers of the B&G site in March 2001. (Am. Compl. ¶¶ 96-97.) In addition, National City Bank became a member of 940 Monroe LLC in March 2001, at the same time as Old Kent Financial Corporation. (*Id.* at ¶ 98; Am. & Restated Operating Agreement of 940 Monroe, LLC, ECF No.65-17.) These actions, which occurred after the alleged releases, do not suffice to make PNC liable.

Relator argues that the state court did not consider whether Defendants could be liable as an "arranger" under CERCLA (or NREPA); however, the state court's reasoning would also apply to such claims. The relevant provision of CERCLA provides that:

> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section-
> . . .
>
>> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, . . . shall be liable. . . .

42 U.S.C. § 9607(a).

"CERCLA does not define the phrase 'arrange for.' . . . [T]he requisite inquiry is whether the party intended to enter into a transaction that included an 'arrangement for' the disposal of hazardous substances." *United States v. Cello-Foil Prods., Inc.*, 100 F.3d 1227, 1230 (6th Cir. 1996). NREPA's cost-recovery provision is patterned after CERCLA and is therefore construed in accordance with it. *See City of Detroit v. Simon*, 247 F.3d 619, 630 (6th Cir. 2001).

There is no indication that Defendants were involved in or otherwise arranged for the removal of any soil from the B&G site. Relator apparently contends that Fifth Third became an arranger when it told the developer that it wanted a "clean environmental" as a condition for providing a loan. (*See* Am. Compl. ¶ 66, ECF No. 12.) Even accepting this allegation as true, however, such conduct is far removed from arranging for the improper disposal of hazardous substances. The developer was not required to accept Fifth Third's condition, and any decision to do so by removing contaminated soil from the B&G site is not attributable to Fifth Third. In the words of the state court, "Fifth Third Bank [merely] did what virtually every commercial lender does in every brown field type case." (*900 Monroe*, Mot. Hr'g Tr. 134.)

Relator also claims that Defendants required the removal of the contaminated soil in the operating agreement for 940 Monroe LLC. The agreement contains no such requirement,

14

however.[3] Moreover, as the state court noted, the banks entered into the agreement several months after the alleged removal of the contaminated soil had already occurred. It defies logic and common sense to claim that the banks arranged for the removal of hazardous substances several months after they were removed.

The state court's reasoning that Fifth Third's membership in 940 Monroe does not render it liable for violations of the HWMA would also apply to claims under other state laws (NREPA), as well as claims under CERCLA. Even though it is a federal law, CERCLA does not "displace[] or fundamentally alter[] common-law standards of limited liability." *United States v. Bestfoods*, 524 U.S. 51, 57 (1998) (noting that); *see also Carter-Jones Lumber Co. v. Dixie Distributing Co.*, 166 F.3d 840, 846 (6th Cir. 1999) (shareholder of a corporation is not liable as an arranger under CERCLA for the acts of the corporation, unless he was personally involved in disposal of the hazardous substances or state law allows for piercing of the corporate veil). Likewise, it does not displace Michigan state law regarding the liability of members of an LLC for the prior conduct of the LLC.

Moreover, even if Relator could show that Defendants (or their predecessors) qualify as arrangers under CERCLA or NREPA, it does not necessarily follow that they were required to disclose any liabilities associated with the B&G site. The CPP agreements

---

[3]The agreement contains warranties by the original members of 940 Monroe that the B&G site is not in violation of state or federal law with respect to soil or groundwater conditions, and that the development will be completed in accordance with government requirements. (Operating Agreement §§ 9.5(e), 9.5(v), ECF No. 65-17.) It also contains an indemnity from the original members of 940 Monroe LLC to Old Kent Financial Corporation and National City Bank regarding claims related to the presence or disposal of hazardous substances on the B&G site. (*Id.* at § 10.1.)

expressly state that Defendants were not required to disclose liabilities that would not "individually or in the aggregate, reasonably be expected to have a Company Material Adverse Effect."[4] "Company Material Adverse Effect" is defined as "a material adverse effect on (i) the business, results of operation or financial condition of the Company and its consolidated subsidiaries taken as a whole . . . or (ii) the ability of the Company to consummate the Purchase and the other transactions contemplated by this Agreement and the Warrant and perform its obligations hereunder or thereunder on a timely basis."[5] Relator makes no allegations indicating that Defendants were subject to any significant liabilities, let alone liabilities that could be expected to have a material adverse affect on Defendants' operations, their financial condition, or their ability to perform their obligations to the Government under the CPP agreements.

An "arranger" under CERCLA or NREPA is potentially liable for the cost of cleaning up a contaminated area, for damages for injury to natural resources, and for the costs of assessing such injury. 42 U.S.C. § 9607(a)(4); Mich. Comp. Laws § 324.20131(1). Relator does not allege that any remedial action has been taken at the B&G site, that any costs have been incurred, or that any injury resulted from the alleged presence or release of the contaminated soils. Hence, no reasonable inference can be made that Defendants' purported

---

[4]Securities Purchase Agreement Standard Terms ¶ 2.2(q), available at https://www.treasury.gov/initiatives/financial-stability/TARP-Programs/bank-investment-programs/cap/Contracts%20and%20Agreements/Fifth20Third20Bancorp.pdf.

[5]*Id.* at ¶ 2.1(a).

liabilities were material enough to be disclosed. Relator's assertion to the contrary is wholly conclusory.

In the absence of any significant liability for the alleged disposal of contaminated soil, Relator's FCA claim necessarily fails. Defendants could not have fraudulently failed to disclose liabilities that do not exist or that they were not required to disclose.[6]

### 2. Jurisdiction

In addition, Relator is barred from bringing his FCA claim because the facts on which his claim is based were publicly disclosed and he does not qualify as an "original source" under 31 U.S.C. § 3730(e)(4). The applicable version[7] of this section provides:

> (A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

> (B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

---

[6] The amended complaint also alludes to liability for "tax fraud arising from disguising loan proceeds as 'capital contributions' to 940 Monroe." (Am. Compl. ¶¶ 148, 154.) Any alleged misrepresentations related to tax credits do not state a claim under the FCA. *See* 31 U.S.C. § 3729(d) (excluding from the scope of the FCA "claims, records, or statements made under the Internal Revenue Code of 1986").

[7] The statute was amended in 2010. The pre-2010 version applies because the conduct giving rise to Relator's claim occurred prior to 2010. *United States ex rel. Antoon v. Cleveland Clinic Found.*, 788 F.3d 605, 615 (6th Cir. 2015).

31 U.S.C. § 3730(e)(4) (1986). In other words, "[a]fter a public disclosure of the basis of the lawsuit, if a *qui tam* relator cannot establish himself as an original source of the information, he has no standing to proceed with the action." *United States ex rel. Antoon v. Cleveland Clinic Found.*, 788 F.3d 605, 615 (6th Cir. 2015). This requirement is jurisdictional. *Id.*

"A public disclosure occurs 'when enough information exists in the public domain to expose the fraudulent transaction.'" *Id.* (quoting *United States ex rel. Jones v. Horizon Healthcare Corp.*, 160 F.3d 326, 331 (6th Cir. 1998)); *see also United States ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 512 (6th Cir. 2009) ("[A] public disclosure reveals fraud if 'the information is sufficient to put the government on notice of the likelihood of related fraudulent activity.'") (quoting *United States ex rel. Gilligan v. Medtronic, Inc.*, 403 F.3d 386 (6th Cir. 2005)). A public disclosure "'includes documents that have been filed with a court, such as discovery documents, and a plaintiff's complaint.'" *Poteet*, 552 F.3d at 512 (quoting *United States ex rel. McKenzie v. BellSouth Telecommunications, Inc.*, 123 F.3d 935, 938 (6th Cir. 1997)). "Either a public disclosure which includes an allegation of fraud, or a public disclosure that describes a transaction that includes both the state of the facts as they are plus the misrepresented state of facts must be present to eliminate jurisdiction in a case." *Dingle v. Bioport Corp.*, 388 F.3d 209, 212 (6th Cir. 2004). "The fact that the information comes from different disclosures is irrelevant. All that is required is that public disclosures put the government on notice to the possibility of fraud." *Id.* at 214.

Fifth Third's and PNC's representations to the Treasury Department, and the relevant facts regarding Defendants' involvement in the development of the B&G site and the release of contaminated soil, were publicly disclosed long before Relator filed this case. The CPP agreements are public documents,[8] as are Relator's prior court filings, in which Relator repeatedly alleged that Defendants were involved in, or responsible for, those releases.

Because a public disclosure has occurred, Relator must establish that he is an original source.  He cannot do so because he did not provide information to the Government about the allegedly fraudulent conduct *before* the public disclosure. *See Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 975 (6th Cir. 2005) (finding *qui tam* suit barred because relator's previous lawsuit based upon the same allegations and transactions publicly disclosed the relevant information before it was provided to the government); *Jones*, 160 F.3d at 335 n.7 (same). Relator argues that he provided the relevant information to the Government before filing suit; however, "this Circuit has held that a relator also must provide the government with the information upon which the allegations are based *prior to any public disclosure*." *Jones*, 160 F.3d at 333-34 (emphasis added) (citing *McKenzie*, 123 F.3d at 942). Thus, Relator's FCA claims are barred.[9]

---

[8]*See* https://www.treasury.gov/initiatives/financial-stability/TARP-Programs/bank-investment-programs/cap/Pages/contracts.aspx.

[9]Fifth Third's contention that the action is also barred by the statute of limitations is without merit.

**B. Counsel should have known that Relator's claims were not viable.**

In response to the motion for sanctions, Relator asserts, through counsel, that he dismissed the case because he realized that he would need testimony from Treasury Department officials to support the FCA claim. (Response to Fifth Third's Mot. for Sanctions 5, ECF No. 79; Response to PNC's Mot. for Sanctions 5, ECF No. 86.) In addition, counsel asserts that he believed that Relator's claims were justified under existing law or a good faith argument for the extension of existing law. (Fitzgerald Decl., ECF No. 86-1.) To the extent that Defendants assert defenses such as *res judicata* or collateral estoppel, counsel asserts that these are affirmative defenses that may be raised only after the complaint is filed. An attorney is not required to anticipate or discover such defenses.

Counsel's response does not address the fact that Defendants' involvement in the development of the B&G site is beyond dispute. They provided loans and became members of 940 Monroe after the contaminated soil was allegedly removed from the site. These facts are not sufficient to give rise to liability, under CERCLA or otherwise.

Furthermore, counsel knew or should have known about Relator's history of litigation on this subject. At the very least, the permanent injunction and the requirement to post a $30,000 bond before filing suit should have put counsel on notice that Relator had filed similar claims against Defendants in the past. That prior litigation reveals the fatal flaws in Relator's current claims, and gives rise to the public-disclosure bar discussed above.

20

### C. Improper Purpose

Relator's extensive history of frivolous, repetitious and unsuccessful litigation against Defendants regarding their alleged liability for environmental contamination at the B&G site is evidence that this additional action, which is based on essentially the same set of facts, was brought for an improper purpose. Consequently, the Court is satisfied that sanctions are warranted under the Court's inherent authority.

### IV.

Based on the foregoing, the Court will grant Defendants' motions for sanctions, as set forth herein. The Court will award Defendants their costs, expenses, and reasonable attorney's fees in connection with this action. The $30,000 bond submitted to this Court will be used to satisfy this award. In addition, for reasons similar to those stated by the Court in Relator's previous *qui tam* action, additional injunctive relief is appropriate under the Court's inherent authority because monetary sanctions and injunctions ordered in the past clearly have not been a sufficient deterrent to the filing of further frivolous litigation. Thus, the Court concludes that the least severe sanction to deter further abuse of the judicial system is a permanent injunction prohibiting Relator from filing any civil action in this court against a defendant named herein unless he first files with the Clerk of the Court a bond in the amount of $50,000 to cover costs, fees, and sanctions that may be levied against him in the litigation.

An order will be entered that is consistent with this Opinion.

Dated: <u>April 26, 2016</u>                    <u>/s/ Robert Holmes Bell</u>
                                        ROBERT HOLMES BELL
                                        UNITED STATES DISTRICT JUDGE