**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: July 21, 2017

Ms. Theresa L. Davis
Reed Smith
10 S. Wacker Drive
40th Floor
Chicago, IL 60606

Mr. Mark John Magyar
Dykema Gossett
300 Ottawa Avenue, N.W.
Suite 700
Grand Rapids, MI 49503

Mr. William F. Mohrman
Mohrman, Kaardal & Erickson
150 S. Fifth Street
Suite 3100
Minneapolis, MN 55402

Re: Case No. 16-1725/16-2592, *U.S., ex rel. William Tingley v. PNC Financial Services Group, et al*
Originating Case No. : 1:14-cv-01097

Dear Sir or Madam,

The Court issued the enclosed (Order/Opinion) today in this case.

Sincerely yours,

s/Bryant L. Crutcher
Case Manager

                                      Direct Dial No. 513-564-7013

cc:  Mr. Thomas Dorwin

Enclosure

Mandate to issue

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 17a0427n.06

Case Nos. 16-1725/2592

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. WILLIAM Q. TINGLEY, III, | ) ) ) | **FILED** Jul 21, 2017 DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| v. | ) ) ) |  |
| PNC FINANCIAL SERVICES GROUP, INC.; FIFTH THIRD BANCORP, | ) ) ) | OPINION |
| Defendants-Appellees. | ) |  |

**BEFORE: GIBBONS, KETHLEDGE, and DONALD, Circuit Judges.**

**BERNICE BOUIE DONALD, Circuit Judge.** Relator William Tingley, III repeatedly filed claims alleging varying theories of liability—including liability under the False Claims Act and Michigan's Hazardous Waste Management Act and liability for bank fraud, tax evasion, and money laundering—against a variety of defendants, all arising from the development of land by Berkey & Gay ("B&G") furniture factory. After voluntarily dismissing his most recent suit, the district court imposed sanctions on Tingley for filing the litigation in bad faith. Tingley appeals. For the reasons discussed below, we **AFFIRM** both the district court's order granting the motion for sanctions and its order calculating the award amount at $81,000.

Case Nos. 16-1725/2592, *United States ex rel Tingley v. PNC Fin. Services Group, Inc., et al.*

I.

Tingley filed numerous suits regarding the development of land by B&G furniture factory, a site located next to a business owned by Tingley. Specifically, as relevant here, Tingley insisted that the developers of the B&G site improperly removed contaminated soil from the B&G site from April to November 2000 and that defendants like Fifth Third Bancorp ("Fifth Third") and PNC Financial Services Group, Inc. ("PNC"), which both financed the B&G renovation, were liable for harm caused by the contaminated soil under various federal and state laws. All five suits were dismissed either on the merits, or as barred by res judicata or the statute of limitations; sanctions were imposed against Tingley in three of these cases, requiring him to pay the defendants' attorneys' fees and costs and enjoining him from filing suit against the defendants again without first paying a cash bond.

In the instant case, Tingley brought suit against Fifth Third and PNC alleging that they entered into Capital Purchase Program ("CPP") agreements with the Treasury Department without disclosing that they were subject to liabilities under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") and Michigan's Natural Resource and Environmental Protection Act ("NREPA") in contravention of the CPP agreement. After Fifth Third moved to dismiss the case, Tingley voluntarily dismissed the action, with the Government's consent, under Federal Rule of Civil Procedure 41(a)(1)(A)(i). Thereafter, Fifth Third and PNC, (collectively, "Defendants") moved for sanctions. The district court granted the motion under its inherent powers.[1]

---

[1] The district court concluded that sanctions were not warranted under 31 U.S.C. § 3730 (authorizing the award of sanctions if defendants prevail in a suit that was clearly frivolous, vexatious, or brought for harassment); 28 U.S.C. § 1927 (authorizing sanctions against an attorney who unreasonably and vexatiously multiplies the proceedings); or Federal Rule of Civil Procedure 11 (authorizing sanctions for frivolous filings if the moving party first serves its motion on the opposing party 21 days before filing it with the court).

- 2 -

Case Nos. 16-1725/2592, *United States ex rel Tingley v. PNC Fin. Services Group, Inc., et al.*

Specifically, the district court observed that Fifth Third Bank and PNC[2] issued loans to the developers in November 2000 and March 2001 respectively *after* the alleged removal of the contaminated soil from April to November 2000.  Furthermore, conditioning the provision of a loan to the developers on them developing on a clean environment did not mean Defendants were involved in or had arranged for the removal of any soil from the B&G site.  The district court went on to conclude that Tingley's *qui tam* action was jurisdictionally barred because he was not the original source of Defendants' statements to the Treasury Department because both the CPP and the information concerning the contaminated soil were publically disclosed long before Tingley filed this action.  According to the district court, counsel knew or should have known of the frivolity of these claims based on the history of Tingley's litigation, and given Tingley's history of repetitively filing litigation based on the same rejected allegations, the claim was brought for an improper purpose.

The district court, therefore, granted Defendants' motion for sanctions, requiring payment of Defendants' attorneys' fees, costs and expenses, and issued a permanent injunction prohibiting Tingley from filing a civil suit against Defendants without first posting a $50,000 bond.  After each Defendant submitted an affidavit detailing costs and fees they incurred, the district court used the lodestar method to calculate attorneys' fees.  Decreasing the hourly fee and the number of hours worked from the numbers submitted by Defendants, the court concluded that Fifth Third expended 150 hours on the case, while PNC expended 120; at a rate of $300 per hour, it calculated the total fees owed to be $81,000.  Tingley filed a timely notice of appeal.

---

[2] National City Bank, the alleged predecessor to PNC, is actually alleged to have issued this loan.

Case Nos. 16-1725/2592, *United States ex rel Tingley v. PNC Fin. Services Group, Inc., et al.*

II.

We review a district court's use of its inherent authority to impose sanctions for an abuse of discretion. *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 516 (6th Cir. 2002). We review its findings of fact, including its findings of bad faith, for clear error. *Griffin Indus., Inc. v. United States E.P.A*, 640 F.3d 682, 686 (6th Cir. 2011).

The district court possesses the inherent authority to sanction a party when it litigates "in bad faith, vexatiously, wantonly, or for oppressive reasons." *First Bank of Marietta*, 307 F.3d at 512 (quoting *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997)). The district court may impose sanctions under its inherent authorities, even if sanctions could be imposed under other rules or statutes. *Id.* (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46, 50 (1991)). To impose sanctions under this power, the district court must conclude that (1) the claims advanced where meritless, (2) counsel knew or should have known that the claims were meritless, and (3) the suit was brought for an improper purpose. *Williamson v. Recovery Ltd. P'ship*, 826 F.3d 297, 301–02 (6th Cir. 2016) (quoting *Big Yank Corp.*, 125 F.3d at 313). This court uses "improper purpose" and "bad faith" interchangeably. *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 752 (6th Cir. 2010) (quoting *First Bank of Marietta*, 307 F.3d at 519 n.15). "[T]he 'mere fact that an action is without merit does not amount to bad faith.'" *Id.* at 753 (quoting *Miracle Mile Assocs. v. City of Rochester*, 617 F.2d 18, 21 (2d Cir. 1980)). Rather, there must be "something more," like fraud on the court, improper use of the court, harassment, delay, or disruption of litigation. *Id.* at 753–54; *see also Chambers*, 501 U.S. at 46 n.10 (noting that the bad faith exception resembles Rule 11, which specifies that improper purpose exists when the litigation is being pursued to "harass or to cause unnecessary delay or needless increase in the cost of litigation").

- 4 -

Case Nos. 16-1725/2592, *United States ex rel Tingley v. PNC Fin. Services Group, Inc., et al.*

When attorneys' fees are imposed, the court should give "fair notice and an opportunity for a hearing on the record."[3] *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980). Further, the court's "inherent powers must be exercised with restraint and discretion," utilized only when "the conduct of a party or an attorney is egregious." *First Bank of Marietta*, 307 F.3d at 516 (citations omitted). In deciding whether to impose sanctions under this authority, we have held that district court must make "actual findings of fact" demonstrating that sanctions are warranted. *Big Yank Corp.*, 125 F.3d at 314 (concluding that the district court abused its discretion in imposing sanctions because the only support for its conclusion that the claim was litigated in bad faith was that counsel "churned a worthless claim to the detriment of their client"). Nevertheless, we may uphold the district court's sanction ruling notwithstanding the absence of specific findings if there is sufficient evidence in the record to support its ruling. *Griffin Indus., Inc.*, 640 F.3d at 688 (reversing an award of sanctions where there was, at best, only implicit findings of bad faith, but the record did not substantiate that finding).

a.

We first turn to Tingley's due process argument that he was not given fair notice of the imposition of sanctions under the district court's inherent authority. Initially, his contention that Defendants never argued for sanctions under the district court's inherent authority in its *motion* is a bit disingenuous. Though Defendants' motions do not reference the court's inherent power to sanction, Fifth Third's brief in support of that motion explicitly does, and PNC's brief in support incorporates those arguments. While Tingley briefly acknowledges this fact, he insists that he was not placed on notice that he had to establish his lack of subjective bad faith or improper

---

[3] Tingley asserts that he was denied fair notice, but does not contend that he was not provided an opportunity for a hearing on the record.

purpose. This assertion, however, is contradicted by the language of Fifth Third's brief in support of its motion for sanctions, which repeatedly references the standards for bad faith an improper purpose. Tingley further insists that he was not on notice because Fifth Third did not analyze the three *Big Yank* factors. He also maintains he was not on notice because the headings in Fifth Third's brief did not address the court's inherent authority. Nevertheless, Fifth Third's brief relies on *First Bank of Marietta*, which explicitly states the *Big Yank* standard. Despite Tingley's obstinate attempt to create confusion, there was nothing unclear about Fifth Third's invocation of the court's inherent sanctioning authority. While Fifth Third did not analyze the *Big Yank* factors, we cannot conclude that Tingley was not on notice of this claim simply because his counsel apparently failed to research the district court's inherent discretionary authority to sanction or review the authority cited by Fifth Third, and instead based his response to Defendants' motions on the labels used in their headings. Accordingly, we reject Tingley's due process argument.[4]

b.

Looking next to the three-part test, we first agree with the district court that the claim pursued in the instant litigation is meritless. As previously mentioned, Tingley has brought a renamed version of the claim at issue several times in the past. Though the courts dismissing these claims often relied on procedural doctrines such as res judicata and collateral estoppel, at least in one case, *Tingley v. 900 Monroe*, a state court case decided in 2004, the court rejected this claim on the merits. Specifically, it orally issued a ruling granting Fifth Third's motion for

---

[4] We also reject as baseless Tingley's assertion that the district court imposed sanctions in violation of Rule 11 because it did not issue a show cause order. Federal Rule of Civil Procedure 11 provides that the court may not impose a monetary sanction "on its own," unless it first issues a show cause under Rule 11(c)(3). Fed. R. Civ. P. 11(c)(5). However, this provision is inapplicable because the district court declined to issue sanctions under Rule 11, and its issuance of sanctions under its inherent authority to do so was done, not on its own initiative, but upon Defendants' motion.

summary disposition pursuant to Michigan Compiled Rules 2.116(c)(8) (failure to state a claim) and (c)(10) (summary judgment).  The court determined that Fifth Third, which entered into a loan agreement with developers and became a member of the development company *after* the removal of the contaminated soil at issue, could not be held liable as a matter of law.  Tingley insists that despite this ruling, his case, based on the same allegations that a bank can be held liable for conduct taken by a developer prior to it entering into any agreements with the bank, is meritorious.  Notably however, Tingley has not cited any authority even suggesting that a bank can be held liable under these circumstances simply because it subsequently became a member of the development company or entered into a loan agreement with the developer conditioned on the renovation being in a clean environment.  We, therefore, conclude that the district court did not abuse its discretion in determining that Tingley's claim lacked merit.[5]

With respect to the second two elements, our decision in *Metz v. Unizan Bank*, 655 F.3d 485 (6th Cir. 2011), is directly on point.  There, we concluded that counsel knew or should have known that the claims were meritless because the court had previously dismissed identical claims during the time when counsel was involved in the case.  *Id.* at 489.  Counsel here should have been aware of the fact that Tingley had previously litigated the same underlying factual allegations and that this argument has been rejected.  Tingley attempts to characterize the instant case as a complex one raising novel issues not previously addressed.  To the contrary, he merely alleges that Defendants falsely represented that it held no liabilities when in fact it did.  However, the only liabilities that Tingley asserts Defendants hold arose from the removal of contaminated soil from the B&G site—the same underlying factual basis for the claims

---

[5] Given that a prior case rejected the same theory of liability underlying the instant litigation, we reject Tingley's reliance on cases declining to uphold sanctions when the plaintiff made at least a "colorable argument."  *See, e.g., KNC Invs., LLC v. Lane's End Stallions, Inc.*, No. 12-08-JBC, 2012 WL 3776510, at *2 (E.D. Ky. Aug. 30, 2012); *Ferro Corp. v. Cookson Grp.*, No. 1:06-CV-3070, 2008 WL 5704456, at *3 (N.D. Ohio June 9, 2008).  Tingley has not done so here.

Case Nos. 16-1725/2592, *United States ex rel Tingley v. PNC Fin. Services Group, Inc., et al.*

repeatedly rejected in prior suits. At the very least, the fact that Tingley was required to pay a bond prior to initiating the instant case should have placed counsel on notice of the potential frivolity of another suit based on the contaminated soil issue. Even if counsel was not involved in all of the prior cases, he was obligated "to conduct a reasonable investigation and uncover evidentiary support for fact allegations *before* filing the complaint." *Johnson v. Moseley*, 790 F.3d 649, 656 (6th Cir. 2015) (citing Fed. R. Civ. P. 11(b)(3)). The district court did not abuse its discretion in holding that counsel should have known the claim being pursued was meritless.

We further held in *Metz* that the complaint was filed with an improper purpose. 655 F.3d at 489–90. There, though the plaintiff had the opportunity to dismiss the case when he realized that the defendants were brought back into a case from which they had originally been dismissed, "[i]nstead, he placed the burden on the banks to file motions to dismiss." *Id.* Rather than filing a response to the motion to dismiss stating that he did not oppose it, the plaintiff filed a motion seeking to dismiss his complaint without prejudice, requiring the defendants to respond, thus "forc[ing] the unnecessary expenditure of time and resources to defend against frivolous and baseless claims." *Id.* at 490 (citing *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 647 (6th Cir. 2006)). So, there was something more than the mere lack of merit. *See id; see also BDT Prods., Inc.*, 602 F.3d at 753–54. Similarly, here, three weeks after Fifth Third moved to dismiss the case, rather than conceding dismissal, Tingley filed a notice of voluntary dismissal without prejudice, to which Fifth Third and PNC expended additional resources responding. The lack of merit of this claim, combined with this further act increasing the cost of litigation, was sufficient to warrant the imposition of sanctions. *See Chambers*, 501 U.S. at 46 n.10. The district court, therefore, did not abuse its discretion in this respect either.

Case Nos. 16-1725/2592, *United States ex rel Tingley v. PNC Fin. Services Group, Inc., et al.*

Tingley's attempts to distinguish *Metz* are unavailing. Though he maintains that the motion for sanctions in *Metz* provided notice that the sanctions were being sought under the court's inherent powers, as discussed above, so did Fifth Third's brief in support of its motion here. Further, while Tingley argues that *Metz* involved sanctions against a party who reasserted claims that the court had previously dismissed *in that case*, as discussed above, the substance of the claims raised in the previously dismissed cases were virtually identical to the allegations in the instant case. This suit was pursued "at the very least, in the face of an obvious risk that [Tingley] was increasing the work on [Fifth Third and PNC] without advancing the litigation." *Red Carpet Studios*, 465 F.3d at 647. Therefore, we conclude that the district court did not abuse its discretion in imposing sanctions.[6]

### III.

We review the district court's award of attorneys' fees for abuse of discretion. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 551 (6th Cir. 2008). To calculate attorneys' fees we use the lodestar method, which requires courts to multiply a reasonable hourly rate by the number of reasonable hours expended. *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004). When the district court, as it did here, provides clear and concise reasons for its fee award, we give its award substantial deference. *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 616 (6th Cir. 2007).

---

[6] We note that Tingley's reply brief suggests that this court sanction Defendants for violation of Sixth Circuit Rule 33, which states that communications made in mediation are confidential and authorizes us to sanction a party in violation of this rule. At issue is a statement in Defendants' briefs that Tingley recently threatened litigation against Defendants again. Aside from Tingley's assertion, we have no way of knowing whether this statement was made in the course of mediation. Given, however, that this statement is not necessary to our decision to uphold the district court's sanction award, we see no harm from this statement and decline to impose sanctions against Defendants at this time.

Case Nos. 16-1725/2592, *United States ex rel Tingley v. PNC Fin. Services Group, Inc., et al.*

Tingley maintains that Defendants sought compensation for an unreasonable number of hours expended. However, the district court agreed and reduced the number of hours claimed by Defendants accordingly. Though Tingley insists that the district court should have separated the drafting process for the motion for sanctions from that for the motion to dismiss, his conclusory statements do not explain how the district court's reduction of Defendants' time did not account for this, give an estimate as to by how much this would have reduced the award of attorneys' fees, or establish that the district court applied an improper framework in issuing the award of attorneys' fees. "It is a settled appellate rule that issues averred to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Leary v. Livingston Cty.*, 528 F.3d 438, 449 (6th Cir. 2008) (citations and internal quotation marks omitted). The district court meticulously articulated its reasons for imposing the fee award at issue and Tingley has not established that the district court abused its discretion in calculating the award. Therefore, we affirm the district court's award of attorneys' fees to Fifth Third and PNC.

IV.

For the aforementioned reasons, we **AFFIRM** the district court's judgment.